117 B.R. 391 (1990)
In re J. Lloyd TOMER and Christine Tomer, Debtors,
Tamalou WILLIAMS, Trustee, Plaintiff,
v.
BOARD OF PENSIONS OF THE CHURCH OF GOD, INC., Defendant.
Bankruptcy No. 89-40634, Adv. No. 90-0041.
United States Bankruptcy Court, S.D. Illinois.
August 3, 1990.
*392 Terry Sharp, Mount Vernon, Ill., for Trustee.
Thomas M. Beeman, Anderson, Ind., for defendant.

MEMORANDUM AND ORDER
KENNETH J. MEYERS, Bankruptcy Judge.
Following a determination by this Court that the debtors were not entitled to exempt the interest of debtor J. Lloyd Tomer in a Church of God, Inc., pension,[1] the trustee brought this turnover action to compel the Board of Pensions of the Church of God, Inc. ("Board"), to pay over the current balance of the debtor's account for the benefit of the bankruptcy estate. The Board answered and filed a motion for summary judgment in which it asserted that the pension plan has the attributes of a spendthrift trust and is excluded from the debtors' estate under 11 U.S.C. § 541(c)(2). The trustee filed a cross motion for summary judgment, and the facts are not in dispute. Having considered the arguments of the parties, the Court finds that that portion of the debtor's pension representing his voluntary contributions to the plan is an asset of the debtors' estate and must be paid over to the trustee.
The debtor, who became an ordained minister with the Church of God in 1969, is a participant in the Contributory Reserve Pension Plan of the Church of God, Inc. The pension plan is funded by a combination of member and congregation contributions. The plan provides that the member (debtor) shall contribute 3% of his salary and the congregation which employs him shall contribute 8% of the member's salary. Both the member and the congregation may make additional optional contributions, which are to be allocated as member or congregation contributions, respectively. When a member attains the age of 60 years or completes 40 years of service, the combined *393 accumulation of the member and congregation contributions is applied to purchase a retirement annuity for the member.
Article VIII provides that if a member becomes ineligible under the plan before the age of retirement or 40 years of service, he may elect to withdraw part or all of the accumulated member contributions. The amount remaining in the member's account will be fully vested in the member and will continue to draw interest until it can be applied toward an annuity or death benefit as provided in the plan. The member accumulation that may be withdrawn consists solely of member contributions and does not include interest on those amounts.
The debtor is 56 years of age and is still an ordained minister of the Church of God, although he is no longer employed as a minister to a congregation. The Board concedes that the debtor could become eligible to withdraw the accumulated member contributions under the plan by the act of resigning his ordination as a minister of the Church of God. The current balance in the pension fund for the debtor is $51,273.35, and the total member contribution, which is the amount the debtor actually contributed to the plan, is $6,848.10.[2]
At hearing, the Board argued for exclusion of the entire pension from the debtors' estate, or, in the alternative, for exclusion of those amounts other than the member accumulation portion of the pension. The Board noted that, under a clause prohibiting alienation or assignment of an interest in the plan, the plan assets could neither be levied upon by creditors nor transferred by the debtor. The Board did not dispute the trustee's characterization of the debtor's contributions as "voluntary," but asserted that since the debtor has no present right to withdraw the member accumulation portion of the plan, neither should the trustee be able to reach the debtor's interest for the benefit of unsecured creditors.
The trustee argues preliminarily that the Board has no standing to raise the issue of whether the pension constitutes property of the debtors' estate because of this Court's previous order sustaining the trustee's objection to the debtors' claim of exemption. In its order of January 3, 1990, the Court made no ruling concerning inclusion of the pension interest as property of the estate but ruled only that the debtors failed to show entitlement to an exemption under Ill.Rev.Stat., ch. 110, par. 12-1001(g)(5) (1987). The Board was not joined as a party in the prior proceeding and, while the debtors could have raised the issue of exclusion from property of the estate in that proceeding, their failure to do so does not preclude the Board from making that argument now. Cf. In re Loe, 83 B.R. 641 (Bankr.D.Minn.1988): issue of whether pension interest was property of estate determined in adversary proceeding after the trustee's objection to exemption was sustained in prior proceeding.
The scope of the bankruptcy estate under the Bankruptcy Code is quite broad and consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In general, property becomes part of the debtor's estate regardless of any restrictions which may have been placed on its transfer. 11 U.S.C. § 541(c)(1). An exception to this rule is found in § 541(c)(2), which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).
The pension plan in the present case contains a standard ERISA clause restricting the transfer of a beneficial interest under the plan by alienation or assignment, "whether voluntarily or involuntarily, or directly or indirectly."[3] The majority of *394 courts addressing the exclusion of ERISA plans under § 541(c)(2) have found such anti-alienation provisions to be insufficient, without more, to result in exclusion of a debtor's benefits as property of his estate. Rather, it is generally held that a debtor's interest in a pension plan will be included in the bankruptcy estate unless the plan qualifies as a spendthrift trust under state law. In re Silldorff, 96 B.R. 859 (C.D.Ill.1989); In re Balay, 113 B.R. 429 (Bankr.N.D.Ill. 1990); see In re Perkins, 902 F.2d 1254 (7th Cir.1990).[4]
In this case, the debtor's pension provides that it is to be governed by the laws of the state of Indiana, which recognizes spendthrift trusts by statute and case law. Traditionally, there are three requirements for a spendthrift trust: (1) the settlor may not be a beneficiary of the trust plan, (2) the trust must contain a clause barring any beneficiary from voluntarily or involuntarily transferring his interest in the trust, and (3) the debtor-beneficiary must have no present dominion or control over the trust corpus. See Matter of Jones, 43 B.R. 1002 (N.D.Ind.1984); Matter of Gifford, 93 B.R. 636 (Bankr.N.D.Ind.1988). The degree of control which the beneficiary exercises over the trust corpus is the principal consideration underlying the determination of spendthrift trust status. Jones; Gifford.
In 1987, the Indiana legislature amended the state's spendthrift trust statute.[5] Indiana Code § 30-4-3-2 now reads:
(a) The settlor may provide in the terms of the trust that the interest of a beneficiary may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.
(b) Except as otherwise provided in subsection (c), if the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest will not prevent his creditors from satisfying claims from his interest in the trust estate.
(c) Subsection (a) applies to a trust that meets both of the following requirements, regardless of whether or not the settlor is also a beneficiary of the trust:
(1) The trust is a qualified trust under 26 U.S.C. § 401(a).
(2) The limitations on each beneficiary's control over the beneficiary's interest in the trust complies with 29 U.S.C. § 1056(d).
Subsection (c) of the amended statute creates an exception to the traditional rule against self-settled or beneficiary created spendthrift trusts, provided the trust is qualified under 26 U.S.C. § 401(a) and meets the requirements of 29 U.S.C. § 1056(d). In the instant case, the debtor has made voluntary contributions to the pension plan and may be said to be both a settlor and a beneficiary as to that portion of the plan consisting of member contributions. Under the traditional test for spendthrift trusts, the member accumulation portion of the plan would not qualify as a spendthrift trust so as to be excluded from the estate under § 541(c)(2). However, because the plan contains an anti-alienation clause complying with 29 U.S.C. § 1056(d), the debtor's plan would constitute a valid spendthrift trust under Indiana Code § 30-4-3-2 despite its self-settled nature.
While amended § 30-4-3-2 alters the first requirement of a spendthrift trust that the settlor not also be a beneficiary of the trust, the additional requirement that a beneficiary enjoy no present dominion and control over trust assets remains intact. Matter of Brown, 86 B.R. 944 (N.D.Ind. 1988); Gifford. As noted above, the beneficiary's inability to gain access to or demand distribution from the trust corpus is the primary element of a spendthrift trust. The determination of whether a trust fulfills this most quintessential of requirements *395 must be made upon examination of all aspects of a particular case. Jones; Gifford.
The Jones and Gifford decisions illustrate the factual inquiry necessary to the determination of whether a particular plan complies with the control requirement for a spendthrift trust. In Jones, the debtor could make no withdrawal from her employer's pension plan even if she discontinued participation in the plan. The only way the debtor could gain access to any portion of the plan was to retire, be terminated, become disabled, or die. The court found this restriction on the debtor's ability to reach plan assets to be sufficient to qualify the plan as a spendthrift trust.[6]
In Gifford, the debtor was the sole beneficiary of a retirement plan established and administered by his professional corporation, of which he was the only shareholder and director. The plan provided that the employer corporation could terminate the plan and, in its discretion, direct distribution of the plan's assets to the debtor as plan participant. The Gifford court, noting that the bankruptcy estate succeeds to powers that a debtor may exercise for his own benefit, concluded that the debtor's right to gain access to the plan corpus "supports a finding of present control over the funds when [the debtor] filed bankruptcy." 93 B.R. at 640. Because the plan did not satisfy the control requirement for a spendthrift trust under Indiana law, the court ruled that it was property of the debtor's bankruptcy estate.
The instant case is like Gifford in that the debtor, at the time of filing bankruptcy, had the ability to withdraw the member accumulation portion of his pension assets by the act of resigning his ordination as a minister of the Church of God. He is no longer employed as a minister and would suffer no loss of employment as a result. Indeed, the only thing he would lose is the right to make further contributions to the pension plan.[7] Thus, the debtor here, like in Gifford, could compel a payment of plan assets by ending his participation in the pension plan.
In a true spendthrift trust, a beneficiary can take no action to initiate an early termination of the trust or invasion of the trust corpus. A right to control distribution from trust funds is inimical to the purpose of a spendthrift trust, which is to provide for the maintenance of another while protecting the beneficiary from his own improvidence or incapacity. Because the debtor could access the entire amount of his member contributions by the voluntary act of resigning his ordination as a minister, he has effective dominion and control over these assets sufficient to disqualify this portion of the plan as a spendthrift trust.
The trustee, in her complaint, seeks turnover of the total assets in the debtor's pension plan, which includes the member contributions and the congregation contributions as well as interest on those amounts. Under the terms of the plan, however, the debtor could withdraw only the member contribution portion by resigning his ordination at this time. The amount remaining in the pension plan is shielded from his dominion and control and thus retains its character as a spendthrift trust. The disqualification of a portion of a plan as a spendthrift trust does not bring the debtor's entire interest, including those funds to which he has no rights of withdrawal, into property of the estate. The funds to which the debtor has no rights of withdrawal satisfy traditional spendthrift *396 requirements and are excluded under § 541(c)(2). See In re Peterson, 88 B.R. 5 (Bankr.D.Me.1988); In re Wallace, 66 B.R. 834 (Bankr.E.D.Mo.1986). The Court finds, therefore, that only the member accumulation portion of the debtor's plan constitutes property of the estate subject to the trustee's turnover action.
The recent decision of the Seventh Circuit Court of Appeals concerning a pension plan governed by Indiana law, In re LeFeber, 906 F.2d 330 (7th Cir.1990), is distinguishable from this case in that the court there considered whether an anti-alienation clause complying with § 1056(d) constituted a restriction on transfer of plan benefits sufficient to meet Indiana spendthrift trust requirements. Section 1056(d), which requires inclusion of a clause prohibiting alienation or assignment of benefits in a qualified ERISA plan, provides that a plan allowing a revocable assignment of ten percent of plan benefits will not be disqualified on that basis. 29 U.S.C. § 1056(d)(2). The trustee argued that this ten percent interest should be included in the debtor's bankruptcy estate because its transfer was not restricted under the debtor's plan. The LeFeber court found, however, that the Indiana legislature's specific reference to § 1056(d) in defining spendthrift trusts meant that the legislature meant to protect the ten percent that could be revocably assigned under § 1056(d).
In the present case, the debtor's plan contains an absolute restriction on alienation or assignment of plan benefits, and there is no question, as in LeFeber, regarding the sufficiency of the plan's anti-alienation clause. However, the plan here, unlike that in LeFeber, contains a provision allowing the withdrawal of plan benefits prior to completion of the plan according to its terms. While the debtor's plan precludes creditors from reaching the plan assets, it fails to protect the plan assets from invasion by the debtor himself. Thus, the plan fails as a spendthrift trust to the extent that the debtor can compel a premature distribution of plan assets, as this is contrary to the purpose and requirements of a spendthrift trust under Indiana law.
The Board asserts that even if fund assets are found to be property of the estate, the trustee cannot recover these funds for the estate because, at the time the debtor filed his bankruptcy petition, the debtor had not resigned his ordination and had no present right to withdraw his contributions from the plan. The Board relies upon In re Silldorff, in which the court, after finding that the debtors' interests in the subject pension plans were property of their bankruptcy estates because plan participants could access the vested corpus of their pension by terminating their employment, concluded that the trustee had no right to compel distribution of the pension funds because the debtors had not terminated their employment at petition date and had no present right to demand the funds. See also In re Balay: trustee not entitled to receive funds which the debtor himself "was not able to presently access" because he had not terminated his employment. Both the Silldorff and Balay courts cited the well-established principle that a trustee's claim to estate property is no greater than a debtor's claim at the time of filing. See 11 U.S.C. § 541(a)(1).
Like at least one court that has rejected the Silldorff position, this Court finds the reasoning of Silldorff and Balay to be anomalous and inconsistent. See In re Lyons, 114 B.R. 572 (Bankr.C.D.Ill.1990). In both instances the courts found that the debtors had the ability to access the funds in their pension plans, resulting in disqualification of the plans as spendthrift trusts. Yet, after finding that the debtors could reach the trust assets, these courts ruled that the trustee had no right to the funds.
To take this reasoning to its logical extreme, suppose the debtor here, at the time of filing bankruptcy, had become disqualified under the Church of God pension plan by resigning his ordination as a minister but had not yet applied for distribution of his member contributions as provided in Article VIII of the plan.[8] In that instance, all would readily agree that the trustee *397 would have the right to take the additional step of making a demand for the funds. It would not be necessary for the trustee to compel the debtors to seek distribution from the pension plan in order to bring the funds into the bankruptcy estate. In the same way, since the debtor, through his voluntary action of resigning his ordination as a minister, could compel distribution of pension funds, the trustee has a concomitant right to the funds regardless of whether the debtor has taken the step of actually resigning his ordination or not. Cf. In re Smith, 103 B.R. 882 (Bankr.N.D.Ohio 1989): trustee entitled to turnover of plan funds of debtor who had reached retirement age but had not yet requested distribution under terms of plan.
The Court agrees with the analysis of the court in In re Schmitt, 113 B.R. 1007 (Bankr.W.D.Mo.1990) and finds its statement of the issue to be well-put. Declining to follow Silldorff, the court stated:
The Silldorff court equates the right of distribution from the pension with termination of employment. The proper analysis seems to be not whether the debtor is presently entitled to receive a distribution, but instead, whether the debtor has rights which allow him to control distribution. It is the debtor's rights to exercise dominion and control over the profit sharing plan that render the plan unenforceable as a spendthrift trust in this case. The trustee, although having no power to terminate the debtor's employment relationship . . ., succeeds to the same rights to control distribution of the proceeds. Since the debtor can absolutely obtain the proceeds, at any time, by terminating his employment, the trustee in bankruptcy succeeds to the absolute right to compel distribution.
Schmitt at 1013.[9]
The Court has found that the debtor's interest in the Church of God, Inc., pension is property of the estate to the extent the debtor had the ability to withdraw funds before completion of the plan term by resigning his ordination as a minister. Because the debtor, through his voluntary action, could compel payment of his accumulated member contributions under the plan, the Board must pay over this amount to the trustee as property of the estate. The Board, therefore, is directed to determine the exact amount of member contributions held in the debtor's account at the commencement of the debtor's bankruptcy case and remit this amount to the trustee.
IT IS ORDERED that the Board's motion for summary judgment is GRANTED IN PART and DENIED IN PART and the trustee's cross motion for summary judgment is GRANTED IN PART and DENIED IN PART.
NOTES
[1] In the Court's order of January 3, 1990, it sustained the trustee's objection to the debtors' claim of exemption under Ill.Rev.Stat., ch. 110, par. 12-1001(g)(5) (1987). The Court found that the debtors were not entitled to exempt their interest in the pension assets because the statutory language exempts a "payment" rather than any lump sum asset. The Court further found that, even if the debtors could show a qualified payment, they had made no showing that such payment was necessary for their support or that of a dependent.
[2] This is the balance shown on the pension account statement dated March 22, 1990. A statement dated August 3, 1989, which coincides more closely with the date of the debtors' bankruptcy filing on July 7, 1989, shows the member's contribution to be $6,584.10.
[3] The provision restricting alienation or assignment is required by ERISA (Employee Retirement Income Security Act of 1974), 29 U.S.C. § 1056(d), and is necessary for tax qualification under the Internal Revenue Code, 26 U.S.C. § 401(a)(13).
[4] The legislative history of § 541(c)(2) indicates that Congress intended to preserve the status of traditional spendthrift trusts, as recognized by state law, enjoyed under the old Bankruptcy Act. In re Goff, 706 F.2d 574 (5th Cir.1983).
[5] Neither of the parties' counsel in this case referred to the amended Indiana statute relating to spendthrift trusts. Since Indiana law governs the interpretation of the pension plan at issue, the Court is at a loss to explain counsel's lack of diligence in bringing this provision to the Court's attention.
[6] Courts are divided on the question of whether a plan beneficiary's ability to withdraw plan assets by terminating his or her employment constitutes sufficient control to preclude the plan from being characterized as a spendthrift trust. In re Perkins, 902 F.2d at 1257, n. 2; cf. In re Boon, 108 B.R. 697 (W.D.Mo.1989): employment termination is a significant restraint upon withdrawal of employee benefits so that ability to access funds by quitting job does not disqualify plan as spendthrift trust, with In re Silldorff: even though ramifications of quitting one's job to gain access to pension interest may be sufficiently severe to prevent abuse, beneficiary's power to compel distribution of plan corpus is antithetical to the nature of a spendthrift trust.
[7] Article VIII provides that any member who becomes ineligible under the plan can make no further member contributions to the pension plan.
[8] Article VIII provides that in the event a member becomes ineligible under the plan, "upon application a member may elect to be paid part or all of the member accumulation of the member." Emphasis added.
[9] The district court in In re Perkins, 1988 WL 120651, 1988 LEXIS 12360 (N.D.Ill.1988), vacated by the Court of Appeals on procedural grounds, 902 F.2d 1254 (7th Cir.1990), likewise found that the debtor's "degree of access" at the commencement of the case was not determinative. The court observed that if so, the debtor could resign and make a demand for payment at any time and the pension account would pass outside the debtor's estate. The court stated that it did not believe Congress intended such an anomalous result.