16 F.3d 1225
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 In the Matter of Robert L. BRANCH, Debtor-Appellant.
 No. 92-3269.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 9, 1994.[1]
Decided Feb. 15, 1994.
 
 Before ESCHBACH, FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 The debtor, Robert L. Branch, appeals pro se[2] from a district court order upholding a bankruptcy court order which, following trial, directed that defendants turn over the proceeds of Branch's pension plan[3] to the trustee in bankruptcy. We hold that the bankruptcy court correctly found that the profit sharing plan was an asset of the bankruptcy estate, 11 U.S.C. Sec. 541, and is not exempt. The court properly ordered the asset to be turned over to the trustee for distribution to the estate's creditors.
 
 
 2
 Section 541(c)(2) of the Bankruptcy Code brings most assets of the debtor into the bankruptcy estate. United States v. Whiting Pools, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). A key exception, however, states:
 
 
 3
 "(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. Sec. 541(c)(2).
 
 
 4
 The language "applicable non-bankruptcy law" includes a state law concerning spendthrift trusts. In re Newman, 903 F.2d 1150, 1152 n. 2 (7th Cir.1990). We are required, therefore, to look at Illinois law. As of the date that the Branch bankruptcy petition was filed, section 12-1001(g)(5) of the Illinois Code of Civil Procedure, Ill.Rev.Stat. ch. 110, par. 1001(g)(5) (1988), provided as follows:
 
 
 5
 "The following personal property, owned by the debtor, is exempt from judgment, attachment or distress for rent:
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 (g) The debtor's right to receive:
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 (5) a payment under any pension plans or contracts, to the extent necessary for the support of the debtor and any dependent of the debtor...." Ill.Rev.Stat., ch. 110, para. 12-1001(g)(5).
 
 
 12
 Thus, the interest under a profit sharing plan was exempt only if the plan was a spendthrift trust under Illinois law. In re Silldorff, 96 B.R. 859 (C.D.Ill.1989).
 
 
 13
 Branch argues that he should be allowed to rely on a new Illinois statute, Ill.Rev.Stat. ch. 110, par. 12-1006 (effective August 30, 1989), now codified at 735 ILCS 5/12-1006, which eliminates paragraph 12-1001(g)(5), and changes the law such that exemptions for pension plan funds are no longer limited to the amounts necessary for support.[4] Branch, however, cannot make use of this new statute.
 
 
 14
 First, section 522(b)(2)(A) of the federal Bankruptcy Code states that exempt property is "any property that is exempt under Federal law ... or state or local law that is applicable on the date of the filing of the petition...." (Emphasis added.) On September 27, 1988, Branch's bankruptcy proceedings began with the Chapter 7 filing of an involuntary petition for bankruptcy. That date controls the determination of exemptions. In re Lyons, 118 B.R. 634 (C.D.Ill.1990), aff'd., 957 F.2d 444, (7th Cir.1992); In matter of Peacock, 119 B.R. 605, aff'd., 125 B.R. 526 (N.D.Ill.1990) (debtor could not take advantage of new Illinois exemption under par. 12-1006 where statute did not become effective until nearly one year after filing of debtor's bankruptcy petition); In re Smith, 115 B.R. 144 (Bankr.C.D.Ill., Jan. 18, 1990); In re Summers, 108 B.R. 200, 203 (Bankr.S.D.Ill.1989); 11 U.S.C. Sec. 522(b)(2)(A).
 
 
 15
 Second, this section is not retroactive. Summers, 108 B.R. at 203-04. Despite the new Illinois provision's reference to "pending" petitions, Sec. 522(b) of the Bankruptcy Code "is preemptive regarding the point in time state exemptions are to be applied in a bankruptcy case" and therefore the "pending on" language in paragraph 12-1006(d) "is unconstitutional as having been preempted by federal statute, and will not be enforced." Summers, 105 B.R. at 204. Accord In re Smith, 115 b.r. at 147 ("pending on" language in Sec. 12-1006(d) is unconstitutional as having been preempted by federal statute).
 
 
 16
 We go on then, to examine whether or not the pension plan in question qualified as a spendthrift trust. In Illinois, a spendthrift trust is "created to provide a fund for the maintenance of another while protecting the fund against the intended beneficiary's improvidence or incapacity." Silldorff, 96 B.R. at 864.
 
 
 17
 "To qualify as a spendthrift trust, the beneficiary thereof must show that he or she cannot alienate his or her interest therein and that he or she does not possess exclusive and effective control over distribution or termination of the trust. Of particular interest is the extent of the dominion and control which the beneficiary exercises over the plan's assets. It is also accepted that the settlor of the trust cannot establish the trust for his or her own benefit." Id.
 
 
 18
 Branch's pension fund was not a spendthrift trust. See Dept. of Mental Health and Developmental Disabilities v. Phillips, 114 Ill.2d 85, 89, 500 N.E.2d 29, 31 (1986) ("A settlor's purpose in establishing a spendthrift trust is to provide for the support and care of the beneficiary while protecting him from his own improvidence"); Altemeier v. Harris, 403 Ill. 345, 86 N.E.2d 229, 234 (1949) (A spendthrift trust cannot be destroyed or terminated by the consent of the beneficiary); Geiger v. Geer, 395 Ill. 367, 69 N.E.2d 848, 853 (1946) ("A spendthrift trust is created with a view of providing a fund for the maintenance of another and at the same time securing it against his own improvidence or incapacity. Directions against alienation by the voluntary act of the beneficiary or through legal process by creditors are the usual incidents of such trusts."), citing O'Hare v. Johnston, 273 Ill. 458, 113 N.E. 127 (1916).
 
 
 19
 The funds in this plan were originally obtained from Branch's retirement fund at Kraft Corporation. After Branch left Kraft and opened his own business, BPH-Meats, Inc., on September 9, 1987, he placed the Kraft retirement funds, $27,000, in a profit sharing plan. On September 10, 1987, Branch withdrew $13,700 in return for a promissory note. Branch, as the settlor, could not establish the trust for his own benefit; he has failed to show that he did not possess exclusive and effective control over the distribution or termination of the trust. As the district court noted, "Branch could control the plan and borrow from it and he did." Branch argues that the "assertion of control is directly contrary to the findings of fact." [Reply brief p. 13] Branch fails to point to any facts to support this assertion. Branch admits, moreover, that almost immediately after setting up the pension plan and opening the new business, he took out a $13,700 loan from the pension fund.
 
 
 20
 Branch's counsel argued before the bankruptcy court that the plan only permitted distribution up to 50% (in case of hardship), and that at the very least the remaining 50% (approximately $13,000) which had not been withdrawn as a loan, qualified as a spendthrift trust because Branch had no power to obtain the funds prior to retirement. But if he wished to obtain the other 50%, Branch need only have terminated the plan. See In re Lyons, 957 F.2d 444 (7th Cir.1992) (not a spendthrift trust where interest in the plan is subject to the control of the debtor); In re Silldorff (same); In re Morris, 151 B.R. 900, 906-07 (C.D.Ill.1993) (if a settlor creates a spendthrift trust for her own benefit, it is void as to existing or future creditors).
 
 
 21
 The funds are exempt, therefore, only to the extent they are necessary for the support of the debtor and his dependents. Branch has made no such showing. Branch argues before this court that the money is needed due to "hardship" suffered "because of a bad business venture," and because of his age [he was born in January 1939], "with failing health, it is prudent for my support in the future needs for the benefit of myself and family." [Brief, p. 7] There simply are no facts in the record to support this assertion.[5]
 
 
 22
 Branch relies on Patterson v. Shumate, 112 S.Ct. 2242 (1992). The Court in Patterson held that the anti-alienation provision in an ERISA-qualified pension plan constitutes a restriction on transfer that is enforceable under "applicable nonbankruptcy law." See Patterson, 112 S.Ct. at 2246-48. Thus, ERISA-qualified plans are excluded from bankruptcy estates under 11 U.S.C. Sec. 541(c)(2). Patterson, 112 St.Ct. at 2246-47; In re Dunn, 988 F.2d 45, 46 (7th Cir.1993). Patterson never reached the question of whether the plan was a spendthrift trust exempt under Sec. 541(c)(2), because the Court found the plan was ERISA-qualified subject to the statutory anti-alienation provision. Branch has presented nothing to this court, however, to indicate that the plan is ERISA qualified. See In re Hall, 151 B.R. 412 (W.D.Mich.1993) (discussing whether pension plan maintained by and benefitting sole shareholder and his spouse is "ERISA qualified" under Patterson ); In re Witwer, 148 B.R. 930 (C.D.Cal.1992) (same).
 
 
 23
 Moreover, the plan is not subject to ERISA. The Secretary of Labor has defined "employee benefit plan" under ERISA. Such plans "shall not include any plan ... under which no employees are participants," and an "individual and his or her spouse shall not be deemed to be employees" if the business is "wholly owned by the individual." 29 C.F.R. Sec. 2510.3-3. Because Branch is the sole beneficiary, he is considered an employer, not an employee for ERISA purposes, and thus the plan has no participants and cannot be considered ERISA qualified. Witwer; Hall. Cf. Giardono v. Jones, 867 F.2d 409, 412 (7th Cir.1989) (using 29 C.F.R. Sec. 2510.3-3 to conclude that pension plan is not subject to ERISA); Fugarino v. Hartford Life & Accident Ins. Co., 969 F.2d 178, 185-86 (6th Cir.1992) (using 29 C.F.R. Sec. 2510.3-3, court finds "a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA"), cert. denied, 113 S.Ct. 1401 (1993).
 
 
 24
 Accordingly, the district court decision affirming the bankruptcy court order is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [2]
 At the hearing before the bankruptcy court, Branch was represented by counsel. Following the bankruptcy's court's decision, counsel moved to withdraw on the basis of irreconcilable differences because Branch refused to follow counsel's advice that an appeal would not be in his best interest in light of the provision in Ill.Rev.Stat. ch. 110, par. 1006
 
 
 [3]
 Branch was the sole owner of BPH-Meats, Inc., and the only individual covered by the profit sharing plan. The custodian of the profit sharing plan, Marine Bank of Champaign, had no objection to turning over the assets
 
 
 [4]
 Section 12-1006 provides:
 "Exemption for retirement plans.
 (a) A debtor's interest in or right, whether vested or not, to the assets held in or to receive ... payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan....
 * * *
 (c) * * * [Such a plan] is conclusively presumed to be a spendthrift trust under the law of Illinois.
 (d) This section applies to interests in pension plans held by debtors subject to bankruptcy ... pending on or filed after the effective date of this amendatory Act of 1989." 735 ILCS 5/12-1006 (effective Aug. 30, 1989) (emphasis added).
 
 
 [5]
 The only reference to a hardship indicates that within a day or two of incorporating the new business, Branch (as the plan's administrator) decided there was a hardship and he loaned himself $13,700 from the plan