**In re Robert CRAIG, Debtor.**

**Bankruptcy No. CB–80–0118.**

United States Bankruptcy Court,
W. D. North Carolina,
Charlotte Division.

Oct. 23, 1981.

Harold Bender, U. S. Atty., Charlotte, N. C., for the S.S.A.

Marcus Johnson, Charlotte, N. C., trustee, pro se.

Richard M. Mitchell, Charlotte, N. C., for debtor.

## ORDER

MARVIN R. WOOTEN, Bankruptcy Judge.

This matter is before the court upon motion of the Social Security Administration (hereinafter called SSA) for relief from an order of this court requiring the SSA to deduct the sum of $144.00 each month from benefits due the debtor, and to pay same to a chapter 13 trustee for distribution to creditors.

## FINDING OF FACTS

THIS COURT, AFTER HEARING THE ARGUMENTS AND HAVING REVIEWED ALL MATTERS OF RECORD IN THE ABOVE–NAMED CHAPTER 13 PROCEEDING, MAKES THE FOLLOWING FINDINGS OF FACT:

1. This proceeding is in a Chapter 13 case, filed with this court on March 6, 1980. The case was confirmed in April, 1980 and the order setting forth the particulars of the plan was entered on June 30, 1980. The confirmed plan provided that debtor would pay $144.00 per month to the Chapter 13 Trustee, for distribution to creditors, attorney fees, and Trustee's costs and compensation.

2. The payment record of the debtor reveal irregular plan payments throughout the period of the plan and even up to the date of this hearing. The Trustee's records indicate that the amount of debtor's plan arrearage as of July 7, 1981 was approximately $992.00, and that the Trustee had issued several delinquency notices to the debtor and attorney for debtor.

3. The debtor is a disabled individual who suffers from blindness due to an eye condition called retenitis pigmentosa, and receives disability benefits under the Social Security Act due to said blindness.

4. In July, 1981, the debtor, through his attorney, requested trustee to have

the monthly payments deducted from his monthly disability benefits, and paid directly to the trustee. On or about July 7, 1981, this court issued an order directing the SSA to deduct from the monthly benefits due debtor, the sum of $144.00, and to pay same directly to the Chapter 13 Trustee.

5. Except by this motion herein, the SSA has failed to respond to said order.

6. The SSA contends that the Bankruptcy Court is without authority to require the SSA to honor the aforesaid order because:

(a) The Social Security Act contains an anti-assignment provision which insulates the benefits of the debtor from "the operation of any Bankruptcy or insolvency law". 42 U.S.C. section 407;

(b) That the funds administered by the SSA are within the meaning of 11 U.S.C. section 541(c)(2) of the Bankruptcy Reform Act of 1978: that provision of the Act specifically exempts from the debtor's estate the income derived from a spendthrift trust;

(c) That Congress, by failing to expressly name the SSA as an entity as defined in 11 U.S.C. section 101(14), did not intend to repeal through 11 U.S.C. section 1325(b), the anti-assignment provision of 42 U.S.C. section 407; and

(d) Finally, that the insulation of the benefits from the authority of the Bankruptcy Court under 11 U.S.C. 1325(b) somehow protects "needy citizens".

## CONCLUSIONS OF LAW

BASED UPON THE FOREGOING FINDING OF FACTS, THIS COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:

1. That this matter is subject to the jurisdiction of this Court pursuant to 28 U.S.C. section 1471.

2. The Court acknowledges the inconsistency between the provisions of the Bankruptcy Reform Act of 1978, to wit 11 U.S.C. sections 1325(b) and 101(14), and the protective provisions of the Social Security Act, to wit, 42 U.S.C. section 407. It is the opinion of the Court that, to the extent of the said inconsistency, Congress clearly intended that the Bankruptcy Reform Act of 1978 shall have precedence. 11 U.S.C. 1325(b) states that after confirmation of a Chapter 13 plan ". . . the Court may order any *entity* from whom the debtor receives income, to pay all, or any part of such income to the trustee. The word "entity" is not used casually within the Bankruptcy Reform Act of 1978 (hereinafter called the Code). "Entity" is expressly defined in section 101(14) of the Code as follows: "entity includes person, estate, trust, governmental unit". In section 101(21) of the Code, "governmental unit" is defined as follows: "governmental unit means United States; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States, a State, a Commonwealth, a District, a Territory, a foreign state, or other foreign or domestic government." It is quite clear from the broad definition given "governmental unit", that Congress intended not to except any "sacred cows" among the various departments, agencies and instrumentalities of the United States, and the fifty states, district, etc. from the meaning of governmental unit. Thus the Social Security Administration is a governmental unit under section 101(21) of the Code, and is an entity under section 101(14) of the Code.

When Congress used the word "entity" in section 1325(b) of the Code, instead of the word "person", "individual", "employer", etc., it therefore intended that the Social Security Administration be subject to orders of the Bankruptcy Court requiring such entity to pay all or any part of debtor's income to the trustee in Chapter 13 cases.

The fact that the Social Security Administration is not expressly excepted from the authority of the Bankruptcy Court under section 1325(b) is certainly not by mere inadvertence or oversight by Congress. On

the contrary, Congress was well aware of the inclusion of social security benefits within the authority and control of the Bankruptcy Court. Section 606(3) and (8) of the Bankruptcy Act of 1898 made Chapter XIII available to an "individual whose principal income is derived from wages, salary, or commission." However, section 109(e) of the Code opened Chapter 13 eligibility to an "individual with regular income...". Section 101(24) of the Code defines "individual with regular income" to mean: "individual whose income is sufficiently stable and regular to enable such individual to make payments under a Chapter 13 plan." The House Report relating to section 101(24) notes the following: "... individuals on welfare, social security, fixed incomes, or who live on investment incomes, will be able to work out repayment plans with their creditors rather than being forced into straight bankruptcy." H.R.Rep. No.95–595, 95th Cong., 1st Sess. at 312 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6269. Therefore, this Court concludes as a matter of law that section 1325(b), of the Code, to the extent it is inconsistent with 42 U.S.C. section 407, does supersede the latter.

■ 3. This Court further acknowledges and fully embraces and shares the strong aversion expressed by the United States Supreme Court to the doctrine of repeal by implication. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 189–90, 98 S.Ct. 2279, 2299–2300, 57 L.Ed.2d 117 (1978); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976); *U. S. v. United Continental Tuna Corp.*, 425 U.S. 164, 168–69, 96 S.Ct. 1319, 1322–23, 47 L.Ed.2d 653 (1976); *Morton v. Mancari*, 417 U.S. 535, 549–50, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). However, that doctrine is not involved in this case. In this instance, Congress clearly made an exception to a law which it previously passed. Congress has always reserved unto itself the power to amend, make exception to, or abolish previous Acts passed by it. Where Congress passes a new Act which in part clearly conflicts with one or more provisions of an existing Act; and where it is equally

clear that the inconsistent provision of the latter Act was not included by mistake, inadvertence or oversight; and where it is also clear that the inconsistent provision of the latter can not be sensibly interpreted so as not to conflict with the former, one must conclude that Congress intended the latter Act, to the extent it is inconsistent with a former Act, shall take precedence over the former. This Court therefore concludes as a matter of law, that section 1325(b), to the extent it conflicts with any anti-assignment provisions of the Social Security Act, is an intentional exception to the contrary provisions of that Act.

■ 4. The SSA argues that the Bankruptcy Court is without authority over SSA benefits due a debtor because the funds administered by the SSA are spendthrift trust funds within the meaning of section 541(c)(2) of the Code and that section provides that "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title". The restriction which would not be enforceable under non-bankruptcy law would be the anti-assignment provision of 42 U.S.C. section 407.

This argument is based upon a misunderstanding of the Code itself. First, this Court is not convinced that the funds administered by the SSA are trust funds of the type protected by section 541(c)(2), however, even if this Court accepted SSA's premise that it's funds are protected under section 541(c)(2), the Court can not conclude that such funds are not a part of debtor's estate within the meaning of section 1306(a) of the Code.

Under the Code, a debtor is allowed to claim certain property as exempt. No debtor, however, is required to claim an exemption. Therefore, a debtor's property will be subject to the control and authority of the Bankruptcy Court if the debtor (a) voluntarily submits it to the court, (b) fails to claim it as exempt, or (c) if the property does not qualify as an exemption under section 522 of the Code. Pursuant to sec-

tion 1306 of the Code, the property of the Chapter 13 debtor's estate includes not only the property of the kind specified in section 541, but also future earnings of the debtor. Section 1322(a) makes it mandatory that every Chapter 13 plan "provide for the submission of all or such portion of future earnings or other future income to the supervision and control of the Trustee as is necessary for the execution of the plan." The plan in this case does, of course, comply with that requirement as part of the original petition in this case. This Court has concluded hereinabove that Congress intended social security benefits to be income of the debtor. Clearly, then, this gives the Court full authority over the income voluntarily submitted to the control and supervision of the Chapter 13 trustee; the trustee being an officer of the Court.

Section 1322(b)(8) further provides that the Chapter 13 plan may "provide for the payment of all or any part of a claim against the debtor from property of the estate or property of the debtor". (Emphasis added). Thus it does not matter if the property of the debtor is exempt because Chapter 13 is an entirely voluntary chapter. No person can be forced into a Chapter 13 proceeding or required to remain in such proceeding against his will. Therefore, unless a debtor moves to protect his property from the Chapter 13 Trustee by dismissing his case, converting to another chapter or otherwise set aside his exemption, his property, and particularly his income, remains subject to the control of the Court regardless of whether it is property of the estate. Nothing in the Code gives the SSA the right to claim an exemption on behalf of a debtor. Therefore, this Court concludes as a matter of law that its authority to issue the challenged order pursuant to section 1325(b) is not affected by whether the income of the debtor is, or is not property of the estate. But this Court further concludes, as a matter of law, that the income of a Chapter 13 debtor is property of the estate.

5. The Bankruptcy Court was granted broad jurisdiction under the Code (*See* 28 U.S.C. section 1471(a) and (e)) and was granted greater authority to issue appropriate orders to carry out its statutory duties and responsibilities. Section 105(a) of the Code states that "the Bankruptcy Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the title". This section is different from its predecessor, section 2a(15) of the Bankruptcy Act which limited the authority of the Bankruptcy Court to issue orders that are "necessary" for enforcement of the provisions of the Act. Clearly Congress intended to allow the Bankruptcy Court to act swiftly and summarily where necessary or appropriate to do so, in order to facilitate the proper and orderly administration of cases. The orderly administration of cases requires that the hands of the Court not be tied by numerous artificial barriers and technical legalisms which serve little purpose other than to hinder and delay the business of the Bankruptcy Court.

The Bankruptcy Court, under 28 U.S.C. section 1481 is a Court of equity and law. It appears to this Court as a matter of equity that the benefits derived by the debtor, the creditors, and the Court by use of the order challenged herein by the SSA greatly outweighs whatever inconvenience is caused to the SSA by complying with such order. The Court notes that the SSA did not allege that compliance with the challenged order would be unduly burdensome or cause excessive expense or hardship.

This Court therefore concludes as a matter of law that it has the authority, pursuant to 28 U.S.C. 1471 and 1481, and section 105(a) of the Code, to issue the challenged order, and that the issuance of same was necessary and appropriate in this case.

7. The SSA implies that orders of the type challenged herein conflict with Congressional policy behind 42 U.S.C. section 407 which is to protect needy recipients and their dependents from claims of creditors. Again, this Court is not impressed by that argument. As pointed out hereinabove, the status of becoming or remaining a Chapter

13 debtor is totally voluntary. Furthermore, the debtor and property of the debtor remains protected to an even greater extent under a Chapter 13 proceeding.

The debtor in this case qualified for Chapter 13 only because his Social Security benefits are now considered regular income under the Code. It seems implausible that Congress would, on the one hand, allow the Social Security benefits to be a crucial qualifying element for a Chapter 13 debtor, and then, on the other hand, place that income beyond the reach of the Bankruptcy Court. This would put many Social Security recipients who choose to use the Chapter 13 provisions at an enormous disadvantage compared to other debtors, because a great percentage of Chapter 13 debtors are utilizing that Chapter either partly or wholly because of their inability to manage their financial affairs. Thus, the direct payments to the Trustee by the entities which distribute the income is an extremely effective self-disciplinary measure which become necessary, at some point, in most successful Chapter 13 cases whose duration extend over a period of several years. This Court therefore concludes, as a matter of law, that the challenged order is in the best interest of the debtor.

8. In support of the foregoing conclusions, this Court gives great weight to the decisions of other Courts on the same or similar issues. The reported decisions of other Courts on these issues have followed similar reason process, and it appears that in all such cases, the final holdings were unananomous against the SSA. *In re Buren* (M.D.Tenn., Oct., 1980) CBC 2d 2:380, 4 B.R. 109, *aff'd* Dist.Ct. 3:48, 6 B.R. 744; *In re Penland,* (N.D.Ga., June, 1981) CBC 2d 4:969, 11 B.R. 522. *See, In re Howell,* (M.D. Tenn., Mar., 1980) CBC 2d 2:177, 4 B.R. 102; *In re Dawson,* (M.D.Ala., July, 1981) CBC 2d 4:1234.

### ORDER

BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED that the United States of America by and through the Social Security Administration, comply with previous order of this Court requiring SSA to deduct from the benefits of the debtor, the sum of $144.00 per month, and to pay same to the Chapter 13 Trustee in this case.