In re Brenda GROVES, Debtor.

Pamela S. HOLLIS, Trustee, Plaintiff,

v.

STATE EMPLOYEES' RETIREMENT SYSTEM OF ILLINOIS, Defendant.

Bankruptcy No. 89 B 5462.
Adv. No. 89 A 801.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 23, 1990.

Pamela S. Hollis, Donald E. Johnson, Hollis & Johnson, Chicago, Ill., for plaintiff.

James D. Newbold, Asst. Atty. Gen., Litigation Div., Chicago, Ill., for defendant.

Pamela S. Hollis, Hollis & Johnson, Chicago, Ill., Trustee.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the court on the cross motions of the trustee, Pamela S. Hollis, and the State Employees' Retirement System of Illinois ("SERS") for summary judgment pursuant to Rule 56 of the Fed.R.Civ.P. which is applicable to these proceedings by virtue of Bankruptcy Rule 7056. For reasons explained in the opinion, SERS's motion for summary judgment is granted. The trustee's motion for summary judgment is denied.

## FACTS

The parties have stipulated to the material facts. The debtor Brenda Groves was employed as a youth supervisor by the State of Illinois at the time of her bankruptcy filing and continues in that position today. As a state employee, she was required to participate in SERS, the state employees' retirement system. *See* Ill.Rev. Stat. ch. 108½, ¶ 14–101 et seq. Employee contributions to the state system are by mandatory wage deductions. SERS is also funded by annual state legislative appropriations and interest earnings upon accumulated sums. The debtor may only withdraw her contributions upon termination of employment, retirement or disability. Ill. Rev.Stat. ch. 108½, ¶¶ 14–103.26, 14–130. SERS has no provision for withdrawal of any contributions for hardship, loans or payments to creditors. SERS is not subject to the Employee Income Retirement Security Act of 1974 ("ERISA") because it is a governmental pension plan. 29 U.S. C.A. § 1003(b)(1) (1985). However, like ERISA-qualified plans, SERS funds are not subject to execution, garnishment or attachment and are not assignable by the employee. Ill.Rev.Stat. ch. 108½, ¶ 14–147.

SERS does not maintain a separate account for each employee's mandatory contributions. In the event of resignation, discharge or dismissal, SERS must calculate the amount of the employee's contributions in order to determine the amount of the employee's refund.

The debtor Brenda Groves made mandatory contributions to SERS which totalled $9,742.60 as of June 30, 1988. She filed her voluntary petition under Chapter 7 of the Bankruptcy Code on March 31, 1989, and claimed her contributions to the State Employees' Retirement System as exempt property. The trustee filed an objection to

the debtor's exemption claim with respect to her SERS contribution. The debtor did not contest the trustee's opposition to the exemption claim. Accordingly, on July 10, 1989, this court sustained the trustee's objection by default and denied the debtor's claim that her SERS contributions were exempt. The trustee then filed the instant adversary proceeding seeking to compel SERS to turn over to the estate the debtor's contributions to the retirement system.

The trustee maintains that the debtor's contributions are property of the estate pursuant to § 541 and seeks a turnover of the funds so that they may be used to pay creditors' claims. SERS opposes the trustee's turnover complaint. In that regard it makes the following arguments: (1) The funds are not property of the estate; (2) The debtor is entitled to an exemption under Ill.Rev.Stat. ch. 108½, § 14–147; (3) The Eleventh Amendment shields the state from a turnover action; (4) Even if held to be property of the estate, the funds are not subject to immediate turnover because the debtor has no present right to demand distribution; (5) Public policy prohibits compelling a turnover of the funds; and (6) A turnover order impairs SERS's contract with the debtor and violates the parties' rights to due process under the Fourteenth Amendment. Both the trustee and SERS have filed motions seeking summary judgment. These motions have been fully briefed and are now before this court for decision.

### JURISDICTION & PROCEDURE

This matter arises under § 522(b), §§ 541(a)(1) and (c)(2), and § 542(a) of the Bankruptcy Code. Accordingly, this Court has jurisdiction over this dispute under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (E) and is before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to the court for hearing and determination.

1. Ill.Rev.Stat. ch. 108½, ¶ 14–147 (Smith–Hurd 1987) provides:

### STANDARD FOR SUMMARY JUDGMENT

 Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In the case at bar both parties have stipulated to the material facts and agree that this adversary proceeding can be resolved as a matter of law.

### DISCUSSION

A. Are The Debtor's Contributions To SERS Property Of Her Chapter 7 Estate?

In determining what is and what is not property of a bankruptcy estate, the starting point for analysis is 11 U.S.C. § 541(a) which provides that the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Property of the debtor becomes property of the estate "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law." 11 U.S.C. § 541(c)(1). An exception to this broad scope of the bankruptcy estate is found in § 541(c)(2), which provides:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

SERS argues that the provision in the Illinois law governing SERS that protects the beneficiary's interest in SERS from execution or garnishment and prohibits assignment of the interest creates a trust containing alienation restrictions enforceable under applicable non-bankruptcy law pursuant to § 541(c)(2). Ill.Rev.Stat. ch. 108½, ¶ 14–147.[1] While the language of

All annuities and other benefits payable under this Article and all accumulated credits of

§ 541(c)(2) arguably supports SERS's position that an anti-alienation, anti-assignment clause is sufficient to exclude a debtor's benefits as property of the estate, and some courts have so held, a majority of courts have relied on the legislative history and have concluded that Congress intended the subsection to exclude only traditional spendthrift state law trusts. *In re Dagnall*, 78 B.R. 531, 533 (Bankr.C.D.Ill.1987) (citations omitted). *See also In re LeFeber*, 906 F.2d 330 (7th Cir.1990). *But see In re Moore*, 907 F.2d 1476 (4th Cir.1990) (The term "applicable nonbankruptcy law" in § 541(c)(2) includes ERISA).

■ The legislative history of § 541(c)(2) clearly indicates that the intent underlying the provision was to preserve "restrictions on transfer of a *spendthrift trust* to the extent that the restriction is enforceable under applicable nonbankruptcy law." *Dagnall*, 78 B.R. at 533 (quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 369, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6325). (Emphasis added). Given the Congressional intent to define the concept of property of the estate broadly in § 541(a), S.Rep. No. 95–989, 95th Cong. 2nd Sess. 82–3 (1978), it is appropriate to read § 541(c)(2) narrowly to avoid limiting the definition of property of the estate further than Congress intended. Therefore, this court agrees with. the line of authorities holding that anti-alienation provisions alone are insufficient to result in the exclusion of the debtor's interest in a pension plan from the bankruptcy estate. *See In re Tomer*, 117 B.R. 391. (Bankr.S.D.Ill.1990); *In re Lyons*, 118 B.R. 634 (C.D.Ill.1990). To fit within the § 541(c)(2) exclusion, the pension plan must qualify as a spendthrift trust under state law.

■ There is no Illinois statute defining the term "spendthrift trust". Instead, the legislature has left it to the courts to define the term. There are three characteristics which the Illinois courts have come to look to in determining whether a spendthrift trust exists under Illinois law:

(1) Whether the trust restricts the beneficiary's ability to alienate and the beneficiary's creditors' ability to attach the trust corpus;

(2) Whether the beneficiary settled and retained the right to revoke the trust; and

(3) Whether the beneficiary has exclusive and effective dominion and control over the trust corpus, distribution of the trust corpus and termination of the trust.

*See In re Perkins*, 902 F.2d 1254, 1257 n. 2 (7th Cir.1990). The most important characteristic in determining whether a spendthrift trust exists is the degree of control which a beneficiary exercises over the trust corpus. *Id.*

■ Applying these principles to the case at hand, it is apparent that SERS is not a spendthrift trust under Illinois law. Under SERS, the debtor can receive a refund of any or all of her contributions to the pension fund at any time. All she has to do to be able to compel such a distribution is to quit her job with the state. It is entirely her decision. This ability of the debtor to force distribution of the trust corpus at any time is contrary to the nature of a spendthrift trust. One of the key purposes of a spendthrift trust is to protect the beneficiary from her perceived inability to manage her own funds. The settlor of a spendthrift trust wants to provide funds for the maintenance and support of the beneficiary while at the same time precluding the beneficiary from having control over the trust res specifically to prevent the beneficiary from squandering that res. There is absolutely nothing that can prevent this debtor from quitting her job, demanding and receiving the .return of her contribution to SERS, and squandering all of those proceeds. "In a true spendthrift trust there is no possible voluntary action a beneficiary can take which would initiate an early termination of the trust or inva-

employees in this system shall be unassignable and shall not be subject to execution, garnishment or attachment, except that a person receiving an annuity or benefit may authorize withholding from such annuity or benefit in accordance with the provisions of the "State Withholding Act", approved August 21, 1961, as now or hereafter amended. [1]
[1] Chapter 127, ¶ 351 et seq.

sion of the corpus." *Lyons,* 118 B.R. 634 (quoting *In re Silldorff,* 96 B.R. 859, 864 (C.D.Ill.1989)). The ability of the debtor to receive all her contributions by resigning her job constitutes sufficient dominion and control over the trust corpus so as to prevent SERS from being viewed as a true spendthrift trust.[2]

SERS argues that *In re LeFeber,* 906 F.2d 330, points to the conclusion that SERS qualifies as a spendthrift trust under § 541(c)(2). In *LeFeber* the Seventh Circuit held that a pension plan governed by Indiana law qualified as a spendthrift trust where the anti-alienation provision of the plan protected 90% of the pension benefits but permitted a revocable assignment of 10% of the plan benefits. *LeFeber* is readily distinguishable from the instant case. First, the SERS plan allows for the return of employee contributions to the employee upon voluntary termination of employment with the state. The pension involved in *LeFeber* had no provision allowing the employee to get at all of his or her contributions. *See Tomer,* 117 B.R. 391. Second, the *LeFeber* case dealt with an Indiana statutory definition of spendthrift trust that differs markedly from the judicial definition of spendthrift trust applicable in Illinois.[3] Since the SERS plan does not qualify as a spendthrift trust under Illinois law, the debtor's interest in the plan is property of the bankruptcy estate under § 541(a)(1).[4]

**B. Is The Debtor's Interest In SERS Exempt?**

At the time of the bankruptcy filing, the debtor claimed that her interest in SERS was exempt without citing to a specific

---

2. The law is clear that a settlor cannot create a spendthrift trust for her own benefit. *See Silldorff,* 96 B.R. at 864. Here the trustee seeks to recover only the debtor's payments to SERS made by deductions from the debtor's paycheck. It is true that the debtor's contributions to SERS were mandated by law and thus to that extent were involuntary. Some courts have held that a debtor's contributions to a pension plan are not "self-settled" to the extent they are involuntary. *See In re Taylor,* 84 B.R. 159 (Bankr.E.D.Mo. 1988); *In re Hohl,* 81 B.R. 450 (Bankr.N.D.Ill. 1987); *In re Sawdy,* 49 B.R. 383 (Bankr.W.D.Pa. 1985). *But see [In re] Balay,* 113 B.R. [429] at 438 (Bankr.N.D.Ill.1990)] ("... any direct or indirect funding of an ERISA-qualified plan by the employee-debtor may be sufficient to convince a court that the trust is self-settled."); *see also In re Swanson,* 873 F.2d 1121, 1124 (8th Cir.1989) (The fact that the contributions to the fund are made at least in part by the debtors violates the rule that prohibits the beneficiary of a spendthrift trust from also being its settlor.). This court does not need to determine whether a settlor's involuntary transfers to a trust res for the settlor's own benefit should be treated differently than voluntary payments into that res since the court has already determined that SERS is not a spendthrift trust under Illinois law.

3. Indiana Code § 30–4–3–2:

 (a) The settlor may provide in the terms of the trust that the interest of a beneficiary may not be either voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.

 (b) Except as otherwise provided in subsection (c), if the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest will not prevent his creditors from satisfying claims from the interest in the trust estate.

 (c) Subsection (a) applies to a trust that meets both of the following requirements, regardless of whether or not the settlor is also a beneficiary of the trust:

 (1) The trust is a qualified trust under 26 U.S.C. 401(a).

 (2) The limitation on each beneficiary's control over the beneficiary's interest in the trust complies with 29 U.S.C. 1056(d).

4. Public Act No. 86–393, enacted on August 28, 1989, amended the Illinois Code of Civil Procedure by adding a new paragraph 12–1006. The new law states:

 [a] retirement plan that is ... a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended, is conclusively presumed to be a spendthrift trust under the law of Illinois.

 Ill.Rev.Stat. ch. 110, § 12–1006(c)(ii) (1989). Courts have disagreed as to whether § 12–1006(c) creates a legitimate exclusion under § 541(c)(2) for plans like SERS. *See In re Block,* 121 B.R. 810 (Bankr.C.D.Ill.1990) and *In re Balay,* 113 B.R. at 442–43, concluding that the new paragraph provides a basis for excluding retirement plans under § 541(c)(2) of the Code; *but see In re Wimmer,* 121 B.R. 539 (Bankr.C. D.Ill.1990), disagreeing with those decisions. Since the debtor filed her Chapter 7 petition in this case on March 31, 1989, before ¶ 12–1006 was passed, the new law does not apply to her case. *In re Summers,* 108 B.R. 200 (Bankr.S.D. Ill.1989); *Balay,* 113 B.R. at 440.

Illinois statutory provision.[5] The trustee filed an objection to the debtor's claim of exemption. The debtor elected not to contest the trustee's objection, and this court entered an order in favor of the trustee on July 10, 1989. Now SERS contends that Ill.Rev.Stat. ch. 108½, ¶ 14–147, the anti-alienation, anti-assignment provision, exempts the debtor's contributions to SERS from the bankruptcy estate.

The trustee questions SER's standing to assert exemptions to which the debtor may be entitled. SERS argues that as "trustee" of the debtor's retirement account, it stands in the shoes of the debtor and has the right and obligation to aid the debtor in claiming exemptions available to her. The court does not question SERS's right to advise the debtor, but finds no support for SERS's assertion that it can assert an exemption claim the debtor has elected not to pursue.

■■■ As a general rule exemption rights in bankruptcy are personal to the debtor, and the debtor cannot be forced to claim them. *3 Collier on Bankruptcy*, ¶ 522.05 at 522–18 (15th ed. 1990). Section 522 of the Bankruptcy Code provides in pertinent part that "... an *individual debtor* may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection." 11 U.S.C. § 522(b) (emphasis added). Section 522(*l*) of the Bankruptcy Code provides in pertinent part, "If the debtor does not file [a list of property claimed as exempt], a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor." The implication in §§ 522(b) and (*l*) is clear. Only a debtor or dependent of a debtor can

claim an exemption on behalf of a debtor in bankruptcy cases. If any entity could claim exemptions on behalf of debtors, the language in § 522(*l*) authorizing dependents to do so would be totally superfluous.

Case law supports this reading of the Code. In *In re Craig*, 15 B.R. 712 (Bankr. W.D.N.C.1981), a Chapter 13 debtor receiving disability benefits under the Social Security Act requested the bankruptcy trustee to have monthly payments deducted from his social security payments for the benefit of creditors. Although the Social Security Act contained an anti-assignment provision which insulated the benefits of the debtor from "the operation of any Bankruptcy or insolvency law," 42 U.S.C. § 407, the debtor did not claim the exemption. The Social Security Administration ("SSA") in opposition to a turnover order asserted that the benefits were exempt because of the anti-assignment provision in the Social Security Act. The court denied the claimed exemption on the grounds that nothing in the Code gave the SSA the right to claim an exemption on behalf of a debtor. *Id.* at 716.

The logic of *Craig* applies equally to the instant dispute. SERS claims the anti-alienation, anti-assignment provision of Ill. Rev.Stat. ch. 108½, ¶ 14–147 exempts the debtor's contributions from the bankruptcy estate. Section 522 of the Bankruptcy Code is quite clear that only the debtor or a dependent of the debtor can exempt property from the estate.[6] Therefore, SERS has no standing to raise the exemption question. Since SERS is not the proper party to assert an exemption, the question of whether ¶ 14–147 in fact exempts employee contributions to SERS is not before the court.[7]

---

**5.** Illinois has opted out of the federal exemption scheme; therefore, the debtor can only claim property exempt under Illinois laws. 11 U.S.C. § 522(b)(1). Ill.Rev.Stat. ch. 110, ¶ 12–1201. *See generally In re Sullivan*, 680 F.2d 1131 (7th Cir.), *cert. denied*, 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982).

**6.** Of course, this debtor did assert that her interest in SERS was exempt without specifying the basis of that exemption claim. However, when the trustee challenged her claimed exemption, she failed to respond, and an order was entered

overruling her claim. No appeal was taken from that order. Since SERS lacks standing to raise the exemption claim, this court need not reach the question of the extent, if any, to which SERS is bound by the ruling against the debtor.

**7.** When the debtor filed her bankruptcy petition, ¶ 14–147 provided:

All annuities and other benefits payable under this Article and all accumulated credits of employees in this system shall be unassignable and shall not be subject to execution, garnishment or attachment

**C. Does Sovereign Immunity Protect SERS From Being Forced To Turn Over Property Of The Estate To The Trustee?**

SERS makes two arguments: (1) as a state agency, it is entitled to sovereign immunity under the Eleventh Amendment; and (2) the principles of sovereign immunity constitute an absolute bar to any suit against a state no matter what relief is sought. SERS relies on *Hoffman v. Connecticut Department of Income Maintenance,* — U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), asserting that case to hold that Section 106(c) of the Bankruptcy Code does not authorize a monetary recovery from the states, as support for both its contentions.

■ In determining whether sovereign immunity constitutes a bar to these proceedings, the first question that must be addressed is whether SERS is covered by the state's Eleventh Amendment immunity. Case law indicates that sovereign immunity acts as a bar to monetary judgments against those state agencies that are deemed to be "alter egos" of the state. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979). A three part test has been developed by the courts to determine whether a state agency is an alter ego of the state for these purposes: (1) Whether the money that would pay the judgment would come from the state; (2) The status of the agency under state law; (3) The degree of autonomy that the agency has. *Lyons,* 118 B.R. 634 (citing *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989). The most important factor in determining "alter ego" status is how the payment of a judgment will affect the general revenues

of the state. *See Miller–Davis Co. v. Illinois State Toll Highway Authority,* 567 F.2d 323 (7th Cir.1977).

■ The district court in *Lyons,* 118 B.R. 634, recently analyzed SERS's relationship to the state under the three part test described above and concluded that SERS was not an alter ego of the state. The *Lyons* court concluded that while the second and third factors, i.e., the degree of agency autonomy and the status of the agency under state law, might slightly favor SERS's entitlement to sovereign immunity, any turnover order would not be satisfied with funds belonging to the State of Illinois. This factor outweighed the other two in reaching the conclusion that SERS was not an alter ego of the state. This court agrees with the *Lyons* analysis.

SERS is funded by contributions from employees and by annual state legislative appropriations. Ill.Rev.Stat. ch. 108½, ¶¶ 14–131, 14–133. These funds are "commingled" and kept in a separate account within the state treasury. Ill.Rev.Stat. ch. 108½, ¶ 14–132. SERS has indicated that employee contributions make up 45% of SERS funds. Brief in Support of Summary Judgment, April 30, 1990, p. 24. The trustee has limited her turnover request to the debtor's own contributions to SERS ($9700), not the state's contributions. The money would come from the separate SERS fund, not the general treasury fund. The fact that some of SERS's funds come from state contributions that are commingled with employee contributions does not change the analysis. *Lyons,* 118 B.R. 634 (citing *Fitchik v. New Jersey Transit Rail Operations, Inc.* 873 F.2d at 660).

It appears that SERS is 65% funded at present, *See Lyons,* 118 B.R. 634; thus, there is no indication that the turnover

---

.... The Bankruptcy Courts in *In re Bartlett,* No. 87–71946 [1988 WL 212057] (Bankr.C.D.Ill. June 30, 1988) and the District Court in *Lyons,* 118 B.R. 634, analyzed this language and concluded that it did not exempt employee contributions. The Illinois General Assembly amended ¶ 14–147, effective August 23, 1989, to specifical-

ly include employee contributions to SERS. The amendment, however, does not apply retroactively to cases such as this case that were pending at the time of the change in the exemption law. Bankruptcy cases are governed by state exemption laws in effect at the time of the petition. § 522(b)(2)(A); *Balay,* 113 B.R. at 440.

order would have to be paid out of the state treasury. The employees contributed 45% of that 65% and the state presumably contributed the other 20%. All the trustee seeks is the money the debtor has paid into the fund over the years. The state did not gain title to those funds by commingling it with its own money. If every state employee who contributes to SERS asked for his or her contributions only (assuming arguendo each was entitled to such a return), each should be able to recover those contributions in full without touching a nickel of the funds contributed by the state.[8] Thus SERS is not an alter ego of the state for purposes of sovereign immunity.

■ Even if SERS was found to be an alter ego of the state, it would still not be entitled to protection against the relief the trustee seeks. SERS relies on *Hoffman* for the proposition that the Eleventh Amendment constitutes an absolute bar to any suit by a trustee against a state that has not filed a claim in a bankruptcy case no matter what relief is sought. However, that proposition is contained only in the concurring opinions of Justices O'Connor and Scalia, not in the plurality opinion of *Hoffman*. The plurality opinion in *Hoffman* is much more limited in scope. The trustee in *Hoffman* sought to collect funds from two Connecticut state agencies under §§ 542(b) and 547 of the Bankruptcy Code. The § 542(b) action involved the trustee's attempt to collect a payment for services rendered by the debtor prepetition from the Connecticut Department of Income Maintenance. The § 547 action sought to recover moneys allegedly transferred by the debtor preferentially to the Connecticut Department of Revenue Services. The issue addressed by the Supreme Court was whether § 106(c) of the Bankruptcy Code authorized a bankruptcy court to enter a money judgment against a state that had not filed a proof of claim in the bankruptcy proceeding. The plurality held that it did not, that nothing in § 106(c) was indicative of Congressional intent to waive sovereign immunity to enable the trustee to recover a money judgment against the State of Connecticut. *Hoffman,* 109 S.Ct. at 2823.

The facts of the instant dispute are markedly different from *Hoffman*. This trustee does not seek money damages from the State of Illinois. Instead she simply seeks an order that the estate turn over to her property of this estate (which happens to be cash) that the state holds. This trustee does not have to establish the existence of a debt owed by the state to the debtor to recover as the trustee did in his § 542(b) action in *Hoffman*. Instead this trustee's action lies under § 542(a) and is more in the nature of declaratory or injunctive relief than an action for monetary judgment. As a result the facts in this dispute are much closer to those of *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), than those of *Hoffman*. In *Whiting Pools* the Court held that the IRS was subject to a turnover order under § 542(a) where the trustee sought to recover personal property seized by the IRS pre-petition in which the debtor retained a possessory or ownership interest. The Court reasoned that "Section 542(a) requires an entity in possession of 'property that the trustee may use, sell, or lease under § 363' to·deliver that property to the trustee." *Id.* 103 S.Ct. at 2312. "We see no reason why a different result should obtain when the IRS is the creditor." *Id.* 103 S.Ct. at 2315.

■ The reasoning of *Whiting Pools* is applicable to the instant proceeding. This court has already determined that the debtor's contributions to SERS are property of the bankruptcy estate. The trustee seeks to recover only the debtor's payments to SERS held in a separate fund from the general revenues of the state to which the debtor would be entitled in the event of termination of employment, retirement or disability. Thus, this is an action to recover property of the estate in the hands of a third party under § 542(a). As such it is readily distinguishable from the §§ 542(b) and 547 actions for monetary recovery against the state in *Hoffman*. What the

---

**8.** There is no indication that SERS is less than 45% funded at present, *i.e.,* that SERS has appropriated employee contributions to some other use.

*Hoffman* trustee sought was money for services rendered to the state and money the debtor paid to the state as an unsecured creditor during the preference recovery period. Where what is sought is not the equivalent of monetary damages against the state, *Hoffman* is inapplicable, and sovereign immunity does not bar the proceeding.[9]

**D. Can This Court Order A Turnover While The Debtor Is Still Employed By The State?**

SERS argues that even if the debtor's interest in the pension funds is found to be property of the estate, the trustee has no present right to distribution because the debtor is still employed and does not have access to the funds. The trustee counters that if the debtor's interest in SERS is property of the estate, then the only practical solution is to compel the immediate turnover of funds rather than requiring the trustee to keep the case open until such time as the debtor becomes entitled to a distribution.

▮ It is a basic tenet of bankruptcy law that a bankruptcy trustee obtains only such rights and interests in the property that passes into the estate as the debtor had in that property at the time of the petition. 11 U.S.C. § 541; *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir.1987). This is true, at least, unless the trustee can improve on the debtor's title to property by using the rights and powers given to the trustee by the Bankruptcy Code, rights and powers such as the pursuit of successful litigation against, for example, a lienholder under one of the trustee's avoiding powers. *See* 11 U.S.C. §§ 544, 545, 547, 548. This trustee has not suggested that she can take advantage of any provision of the Bankruptcy Code to improve on the debtor's rights and interest in her contributions

to SERS. Thus, although the court has previously ruled that the debtor's interest in SERS is property of the estate, that does not end the analysis. It becomes necessary to determine just what property interest of the debtor the trustee succeeds to. That in turn requires the court to determine the nature of the debtor's interest in SERS as of the date of the petition.

▮ If the debtor had no longer been employed by the state at the time of the petition, this analysis would be greatly simplified. As a former state employee, the debtor would have been entitled to recover her SERS contributions at the time of the petition, and the right to recovery would have passed to the trustee. However, when this petition was filed, the debtor was employed by the state. The parties have stipulated that she is still working for the state.[10] Therefore, the debtor could not and cannot force the state to return her SERS contributions to her. Ill.Rev.Stat. ch. 108½, ¶ 14–130. The question is whether the trustee can force the state to pay the trustee the debtor's SERS contributions even though the debtor herself could not reach those funds without quitting her job or becoming disabled.

Several cases have allowed a trustee to get at pension funds the debtor could not reach without quitting his or her job. *See, e.g., In re Schmitt*, 113 B.R. 1007 (Bankr. W.D.Mo.1990); *Tomer*, 117 B.R. 391; *In re Green*, 115 B.R. 1001, 1010 (Bankr.W.D. Mo.1990). The court does not find the reasoning in these cases persuasive. Nothing in the Bankruptcy Code or Rules gives the bankruptcy court the power to force the debtor to quit her job in order to mature her claim to a return of her SERS contributions for the benefit of the trustee. Compare Bankruptcy Rule 6004(f)(2). It would be antithetical to the fresh start purpose of

---

9. SERS raises the issue of public policy as another reason to protect SERS from a turnover order. SERS says that, if it is required to turn over plan assets, then (1) SERS may be in violation of its constitutional and statutory mandates; (2) SERS may lose its favorable Federal tax treatment. The short answer to this is that SERS should take the argument up with Congress rather than this court. The Bankruptcy

Code defines property of the estate and provides for the turnover of that property to the trustee. *See* 11 U.S.C. §§ 541, 542. That is the public policy this court must follow.

10. There is no suggestion in this record that the debtor is in any way disabled and entitled to a return of the funds on account of disability.

the Bankruptcy Code for this court to order the debtor to leave her employment with the state. By the same token, however, nothing in the Bankruptcy Code or Rules allows this court to rewrite the agreement between the debtor and SERS. SERS agreed to return the debtor's contributions to the fund only if the debtor was no longer employed by the state. It did not agree to return the money if the debtor encountered financial difficulties and needed the money to pay creditors or in any other circumstances as long as the debtor was still employed by the state. This court can find no authority allowing it to alter that agreement.

Instead, the court believes that the trustee has succeeded to exactly what the debtor had in terms of recovery of her contributions to SERS as of the date of the petition, i.e., a contingent right to the return of the money in the event the debtor's employment by the state is terminated.[11] *See Lyons*, 118 B.R. 634; *Silldorff*, 96 B.R. at 866–67; *Balay*, 113 B.R. at 445; *In re Loe*, 83 B.R. 641 (Bankr.D.Minn.1988). The trustee can deal with that property interest in the same way she would deal with any property of the estate in a Chapter 7 case. She can keep the Chapter 7 case open and hold on to the contingent interest to see if it matures, i.e., to see if the debtor leaves her job with the state. If the debtor is no longer employed by the state, the trustee can require SERS to pay all of the debtor's prepetition SERS contributions to the bankruptcy estate. *Tomer*, 117 B.R. 391.[12]

Alternatively, the trustee can sell what she has—the contingent right to a return of the SERS contributions payable only in the event the debtor leaves her job with the state—for whatever price the market will bid for such an asset. *See generally* 11 U.S.C. §§ 363 and 704(1). Finally, if the trustee cannot find a buyer for the contingent right to a return of the debtor's SERS contributions and the trustee would find it unreasonably burdensome to keep the estate open to see if the debtor's employment by the state ends, the trustee can seek an order of this court authorizing her to abandon the contingent right to the SERS contributions. *See* 11 U.S.C. § 554. Such an abandonment would result in the right irrevocably revesting in the debtor. *4 Collier on Bankruptcy* ¶ 554.02[2] at 554–7 (15th ed. 1990). As a result, there is always the possibility that the debtor will gain a great windfall by quitting her state job and getting the contributions back the day after the trustee abandons the contingent right to recover the SERS contributions. However, the risk is no greater than the risk that attends any decision by a Chapter 7 trustee to seek court authority to abandon property of the estate. Events can always happen that would make the value of abandoned property increase after abandonment. If that happens, the debtor gets the benefit of the increase.

 The point is that the Bankruptcy Code requires the trustee to either reduce the property of the estate to cash or to abandon it. She is to administer the estate and liquidate it and close it out as expeditiously as is in the best interests of the creditors. See 11 U.S.C. § 704(1). The asset involved in this dispute is no different

11. SERS argues that a turnover order despite the anti-attachment provision of Ill.Rev.Stat. ch. 108½, ¶ 14–147 impairs the SERS contract with its plan members in violation of SERS's and the debtor's due process rights. SERS claims additional due process violations on the grounds that litigating only the turnover issue provides no guidance to SERS and the debtor as to their future relationship after the turnover order is issued. SERS contains no provisions for dealing with a debtor/employee whose contributions have been partially withdrawn from the fund.

Since this court has held that the trustee has no greater right than the debtor to compel a present distribution of pension contributions, nothing the court has held would alter the agreement between SERS and the debtor. By the same token, since this court has held that the trustee cannot compel distribution while the debtor's employment with the state continues, the situation of an employee's contribution being partially withdrawn by a turnover order and the employee continuing to work for the state, the situation hypothesized by the state, cannot arise. Therefore, the due process argument raised by SERS need not be considered.

12. Of course, the debtor's postpetition contributions to SERS are not property of the estate and would be returnable to the debtor. *See* 11 U.S.C. § 541(b)(6).

than any other property of the estate. The Bankruptcy Code and Rules provide no special treatment for this type of asset. Therefore, the trustee should deal with the property at issue here the same way she would deal with any other property of a Chapter 7 estate.

## CONCLUSION

For the foregoing reasons SERS's motion for summary judgment is granted. The trustee's motion for summary judgment is denied.