**In re Paul CLAY, Mary Clay, Debtors.**

**Myrtle McDonald, Trustee, Plaintiff,**

**v.**

**Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid–Century Insurance Company, Farmers New World Life Insurance Company, Texas Farmers Insurance and Farmers Texas County Mutual, Defendants,**

**v.**

**Paul Clay, Third Party Defendant.**

Bankruptcy No. 97–21296–7.
Adversary No. 98–2070.

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

Dec. 6, 1999.

Rodney R. Betts, Amarillo, TX, for debtors.

Samuel Allen, Jackson Walker, LLP, San Angelo, TX, for Farmers Insurance Exchange.

Myrtle McDonald, Lubbock, TX, Chapter 7 Trustee.

## MEMORANDUM OF OPINION ON PROPERTY OF THE ESTATE

JOHN C. AKARD, Bankruptcy Judge.

Myrtle McDonald, the Trustee–in–Bankruptcy (Trustee) for Paul Clay and Mary Clay (Debtors), seeks to have Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid–Century Insurance Company, Farmers New World Life Insurance Company, Texas Farmers Insurance, and Farmers Texas County Mutual (Companies) turn over to her the "Contract Value" of Mr. Clay's Agent Appointment Agreement (Agreement).[1] She asserts that the Agreement is property of the bankruptcy estate under § 541 of the Bankruptcy Code[2] and that the Contract Value should be turned over to her pursuant to § 542 of the Bankruptcy Code.

The court finds Contract Value to be part of an unassumable executory contract for personal services under § 365, and

---

**1.** This court has jurisdiction of this matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

**2.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

thus it is not property of the estate. The court further finds that although the Contract Value might have had value to the estate on the date of filing, any contingent interest the Trustee had in Contract Value expired twelve months following the Debtors' voluntary filing of their bankruptcy petition.

## FACTS

Effective October 1, 1984, Mr. Clay entered into a Farmers Insurance Group of Companies Agent Appointment Agreement[3] to serve as an insurance agent for the Companies in Pampa, Texas. On November 24, 1997, the Debtors filed for relief under Chapter 7 of the Bankruptcy Code. They scheduled $190,000 in Contract Value under the Agreement as an asset. The Debtors also scheduled an obligation to the Farmers Insurance Group Federal Credit Union (Credit Union) in the amount of $83,000[4] secured by a lien on the Contract Value. The schedules showed tax obligations of $137,523.40 and general unsecured debts of $15,024.57.

The Trustee did not assume the Agreement subsequent to the bankruptcy filing. Mr. Clay continued to operate as an agent for the Companies under the Agreement. Neither Mr. Clay nor the Companies terminated the Agreement.

## AGREEMENT

The Agreement appointed Mr. Clay as an agent to sell policies issued by the Companies. The Companies agreed to pay him new business and service commissions in accordance with their established schedules, to give him training and advertising assistance, and to make group life and medical insurance available to him. Mr. Clay agreed to sell insurance for the Companies and to submit every request or application for insurance of the type provided by the Companies to them. Mr. Clay was to provide his own office as well

as a fidelity bond. The Agreement could be terminated by the mutual consent of the parties or by either party on three months written notice.

Paragraph G of the Agreement provides that in the event of termination of the Agreement, the Companies will pay the Contract Value to Mr. Clay or his heirs, except in the case of embezzlement when there would be no payment. The Contract Value is based upon: "(1) the amount of service commissions paid to the Agent on active policies during either the six month or twelve month period immediately preceding termination; (2) the number of policies in the Agent's active code number; (3) the number of years of continuous service as an Agent for the Companies immediately prior to termination." Trustee's Ex. A at ¶ G. The Agreement provides that if an agent has less than fifty policies in an active code number, there will be no Contract Value. Otherwise, the Contract Value will be computed for each company in accordance with a schedule contained in the Agreement. *Id.*

The Agreement also provides for an Underwriting Contract Value Bonus in accordance with programs and schedules published from time to time by the Companies. Certificates of entitlement to the Underwriting Contract Value Bonus are to be issued to the agent annually and "shall state said bonus in terms of percentages and shall be fully vested when received, based on the Contract Value at the time of termination, in accordance with the bonus program. Upon vesting, the percentage of Underwriting Contract Value Bonus will inure to the benefit of the Agent, his heirs and assigns, and may not be reduced." *Id.* The testimony at the hearing did not indicate that Mr. Clay's Contract Value contained any Underwriting Contract Value Bonus.

---

3. Trustee's Ex. A.

4. The parties stipulated that the amount owed to the Credit Union on the date of filing the bankruptcy was $79,568.

The Contract Value and amounts payable as an Underwriting Contract Value Bonus are to be paid in "not less than three installments and not less than six month intervals." *Id.* The Agreement provides that the Agent is an independent contractor and is not an employee of the Companies. *Id.* at ¶ J.

## POSITIONS OF THE PARTIES

The Trustee asserts that the Agreement is property of the estate under § 541 of the Bankruptcy Code and that the Contract Value (less the amounts owing to the Credit Union) should be paid to the Trustee under § 542 of the Bankruptcy Code. The Companies state that the Contract Value is neither a matured debt nor money owed to Mr. Clay. Thus, it is not subject to turnover under § 542 because it is neither property the Trustee may use, sell, or lease, nor is it property that the Debtor could exempt. The Companies filed a third party action against Mr. Clay asserting that the Trustee's action should be against Mr. Clay instead of against the Companies. Mr. Clay asserts that he has no entitlement to the Contract Value until the Agreement is terminated and that the Contract Value is in the nature of a trust for Mr. Clay's retirement.

## ISSUE

The Agreement provides that the Contract Value is to be paid upon termination. *Id.* at ¶ G. The Trustee has no better rights under the Agreement than the Debtor. Consequently, the Trustee cannot force payment of the Contract Value as long as the Agreement remains in force. Therefore, the issue becomes whether the Trustee can terminate the Agreement in order to receive the Contract Value for the benefit of the creditors. The Debtor asserts that if the Agreement is terminated, he would not be given a new agent's appointment by the Companies because of his bankruptcy and the fact that he does not have a college degree. He asserts that

the Companies are no longer appointing agents who do not have college degrees.

## DISCUSSION

### Property of the Estate

The court first determines whether the Agreement, and thus the Contract Value, is property of the estate. All legal and equitable interests of the debtor become property of the estate upon commencement of the case. § 541(a)(1). The Fifth Circuit, however, has stated that, "[u]nlike other assets of the debtor, the interest in an executory contract does not automatically vest in the bankruptcy estate at the time of filing." *Tonry v. Hebert (In re Tonry)*, 724 F.2d 467, 469 (5th Cir.1984). An executory contract becomes part of the bankruptcy estate when the contract is assumed by the trustee. However, the executory contract is nonassumable if, under applicable law, any party other than the debtor may decline to accept performance by the trustee. § 365(c)(1)(A), (B). If an executory contract is nonassumable, and thus not part of the bankruptcy estate, it may still have value at the date of filing, measured on a *quantum meruit* basis of the services performed before the bankruptcy filing. *See Turner v. Avery (In re Avery)*, 947 F.2d 772, 774 (5th Cir.1991).

The Agreement fits within the generally accepted definition of an executory contract which states "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *The Cajun Elec. Members Comm. v. Mabey (In re Cajun Elec. Power Co-op., Inc.)*, 230 B.R. 693, 702 (Bankr.M.D.La.1999) (citation omitted). In her trial brief, the Trustee also acknowledges that the Agreement is an executory contract for personal services and cannot be assumed (citing *Williams v. Tomer (In re Tomer)*, 128 B.R. 746 (Bankr.S.D.Ill.1991)). The Agreement, as

an executory contract for personal services, is not part of the bankruptcy estate. However, the analysis does not stop there. Any amounts the Debtor earned under the contract prior to filing his petition are property of the estate. Therefore, the court must determine if Contract Value includes payment for any prepetition services rendered.

## Contract Value Attributable to Fees Earned Prepetition

■ The personal service cases cited by the Trustee dealt with determinable amounts related to prepetition services. *See Affiliated Computer Sys., Inc. v. Sherman (In re Kemp)*, 52 F.3d 546, 554 (5th Cir.1995) (prepetition earned income withheld by the employer is property of the estate); *Turner v. Avery (In re Avery)*, 947 F.2d 772, 774 (5th Cir.1991) (fees earned prepetition under an attorney's executory contracts are property of the estate); *Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1425 (9th Cir.1984) (fees related to prebankruptcy services paid through contact value received upon termination of position are property of the estate); *Williams v. Tomer (In re Tomer)*, 128 B.R. 746, 762 (Bankr.S.D.Ill.1991) (deferred commissions on prepetition policies are property of the estate). The most factually similar case cited by the Trustee, *Ryerson, supra*, dealt with a trustee seeking turnover of the debtor's interest in "contract value." Ryerson was also an agent working under an agreement with Farmers Insurance. However, Ryerson terminated his agreement eight months after filing his Chapter 7 petition. The court held that any portion of the contract value relating to prepetition services was part of the bankruptcy estate and any postpetition services were not included in the estate. *Ryerson*, 739 F.2d at 1425–26.

Because Ryerson filed his bankruptcy petition within twelve months of termination, prepetition contract value could easily be determined. Contract value was calculated upon Ryerson's termination and Ryerson had a legal right to contract value at that point. The Agreement in this case has not been terminated.

The Agreement provides that the Contract Value is to be determined and paid upon termination and that no Contract Value exists if the agent either embezzles from the company or fails to have at least fifty policies in his active code number at the time of termination. The only way Contract Value can accurately be determined is through the calculation stated in the contract based on "either the six month or twelve month period *immediately preceding termination.*" (Trustee's Ex. A at ¶ G (emphasis added)). Contract Value cannot be determined, and thus cannot come into quantifiable existence, until termination.[5] Contract Value, therefore, cannot be apportioned between prepetition and postpetition services until the value is actually determined. If the Agreement were terminated within twelve months of the Clay's filing of their petition, Contract Value could be determined and a portion of that value would clearly be property of the estate. However, neither party to the contract has sought to do so. Both Mr. Clay and Farmers expressed their desire to continue, not terminate, the Agreement.

### Forced Termination of the Contract

This court agrees with the conclusions of the *Groves* Court. *Hollis v. State Retirement Sys. (In re Groves)*, 120 B.R. 956 (Bkrtcy.N.D.Ill.1990). Ms. Groves was required to make employee contributions to her retirement plan through mandatory wage deductions under her employment agreement with the state. Ms. Groves could only withdraw her contributions

---

**5.** Although the Agreement provides for vested rights in Underwriting Contract Value Bonuses (a payment separate from Contract Value, but included in Contract Value), the Trustee failed to establish the value of any Underwriting Contract Value Bonuses. A determination of the value of Underwriting Contract Value Bonuses, however, would not change the outcome of this case.

 

upon termination of employment or disability. After filing her Chapter 7 petition, the trustee filed an adversary proceeding to recover the contributions. *Id.* at 958. The court held that although the contributions were property of the estate, the court could not order turnover of the contributions while the debtor was still employed by the state. The court said:

> Nothing in the Bankruptcy Code or Rules gives the bankruptcy court the power to force the debtor to quit her job in order to mature her claim ... for the benefit of the trustee.... It would be antithetical to the fresh start purpose of the Bankruptcy Code for this court to order the debtor to leave her employment.... By the same token, however, nothing in the Bankruptcy Code or Rules allows this court to rewrite the agreement between the debtor and [her employer]....
>
> [T]he trustee has succeeded to exactly what the debtor had in terms of recovery ... as of the date of the petition, i.e., a contingent right to the return of the money in the event the debtor's employment by the state is terminated.

*Id.* at 965–66.

As discussed in *Groves,* a trustee has the same options as with any other property interest. The options are as follows: (1) keep the Chapter 7 case open and see if the contingent interest matures, i.e., if the agreement is terminated within twelve months of filing, so that Contract Value could be determined; (2) sell the contingent right to Contract Value for whatever the market will bid; or, (3) if no buyer exists and it is unreasonably burdensome to keep the estate open, the trustee can seek an order authorizing her to abandon the contingent right. *Id.*

The Clays filed their petition on November 24, 1997. Clearly, twelve months have passed without termination of the Agreement. Thus, the estimated value of $190,-000 never matured into Contract Value that the Debtor could force Farmers to pay. Neither Mr. Clay nor the Trustee is entitled to payment of Contract Value at this time.

## CONCLUSION

The court finds Contract Value is not property of the estate and any contingent interest the Trustee had in Contract Value expired twelve months following the Debtors' voluntary filing of their bankruptcy petition.

ORDER ACCORDINGLY.[6]

---

6. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED.R.BANKR.P. 7052 which is made applicable to Contested Matters by FED.R.BANKR.P. 9014. This Memorandum will be published.